UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARAO ABEL PEREIRA,

              Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF JUSTICE,

              Defendant.

24-CV-5320 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is appearing *pro se*, brings this action invoking the Court's diversity of citizenship jurisdiction and alleging that Defendant violated his federally protected rights. By order dated July 24, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. The Court dismisses this action for the reasons set forth below.

## STANDARD OF REVIEW

      The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

      While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted emphasis in original).

## BACKGROUND

Plaintiff filed this action against the "New York City Department of Justice," for which he provides an address at 86 Chambers Street in Manhattan. He alleges that the underlying events occurred from 2005 through 2024, in "Bronx/Manhattan Private/Public Services" and in the New York City Civil Court, Bronx County.[1] (ECF 1 ¶ III.) The following facts are drawn from the complaint.

In 2005, Plaintiff and his two daughters came to the United States, "fleeing the tyranny dictatorship regime of" their native country of Angola, and seeking the "American Dream" of "staying, living, working, studying." (*Id.*) In 2007, tutors, teachers, and staff at a shelter for new immigrants sexually abused his daughters. (*Id.* at 21.) In 2009, Plaintiff hired an attorney, Steven E. Savage, to file a lawsuit in state court about the events involving his daughters, but Savage never worked on the case. Plaintiff states that he won a money judgment of $1,590 against Savage, but the judgment was never paid. (*Id.* at 11-12, 16-17.) In 2017, Plaintiff contacted another attorney, Hillary Nappi. Plaintiff alleges that Nappi "brainwashed" his daughters and delayed working on the case until his daughters reached the age of majority, at which time she signed retainer agreements directly with them. (*Id.* at 18-19.) Sometime between June 1, 2023, and August 30, 2023, Nappi "gave away Checks of Compensatory Damages" directly to his daughters. (*Id.* at 20.) Plaintiff asserts that Nappi acted improperly because his daughters, although "adults," do not "have [sufficient] experience living in the United States without family

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, punctuation, and capitalization are as in the original unless noted otherwise.

or a community." (*Id.*) Plaintiff further states that Nappi and his daughters have "disappeared," and that Nappi acted out of animus towards Plaintiff because of his race and national origin. (*Id.* at 20.)

Plaintiff discusses other events that led to him filing lawsuits in state court that also ended unsatisfactorily. In 2011, Plaintiff attempted to ship a used car to Angola, but the person he hired never performed that service. Plaintiff won a $1,824.63 judgment against that individual, but the judgment was never paid. (*Id.* at 12-13.) In 2012, Plaintiff sued a Bronx autobody shop because work was never performed on a vehicle that he brought in for repair. Plaintiff won a money judgment of $9,995 in 2014, and although the court clerk "approved garnishment," the judgment was never paid. (*Id.* at 10). In 2015, another vehicle belonging to Plaintiff was unlawfully moved out of a paid parking spot. (*Id.* at 23.). After a long delay, Plaintiff won a $7,500 money judgment against the lot owner, but the judgment was never paid. (*Id.* at 24.) Then, in 2022, Plaintiff purchased a used vehicle on EBay, and hired a Florida man to transport it to New York. Although Plaintiff paid the man $3,200, he disappeared with Plaintiff's money and never delivered the vehicle. (*Id.* at 14.) It is not clear that Plaintiff filed a lawsuit regarding that incident.

Plaintiff asserts that in this pleading he is "Complaining against State of New York Justice Civil Court System the way treatment of cases leaving them unpaid. Also I am accusing State of New York Justice System Violating *my* Constitutional Rights." (*Id.* at 24-25.) Plaintiff seeks to have this Court "to act as Court of Law and Justice, to make *my* Constitutional Rights back to Me!" (*Id.* at 25.) Plaintiff seeks $2 million in damages. (*Id.* ¶ IV.)

## DISCUSSION

### A.   Subject Matter Jurisdiction

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has jurisdiction only when a "federal question" is presented or when plaintiff and defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000. "[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

### 1.   Federal question jurisdiction

To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Mere invocation of federal question jurisdiction, without any facts demonstrating a federal law claim, does not create

federal question jurisdiction. *See Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996).

The Court construes the complaint as seeking to enforce unpaid state court judgments. Federal law, specifically 28 U.S.C. § 1963, allows for the registration in a federal district court of other federal district court judgments. Section 1963, however, does not provide a basis for a litigant to come to federal court to enforce a state court judgment. *See, e.g.*, *Cont'l Cas. Co. v. Argentine Republic*, 893 F. Supp. 2d 747, 753 (E.D. Va. 2012) ("Although 28 U.S.C. § 1963 provides for registration of other federal district court judgments, there is no parallel provision for state court judgments."); *Marbury Law Grp., PLLC v. Carl*, 729 F. Supp. 2d 78, 83 (D.D.C. 2010) ("[T]his court lacks jurisdiction to enforce state court judgments."); *Euro-Am. Coal Trading, Inc. v. James Taylor Mining, Inc.*, 431 F. Supp. 2d 705, 707 (E.D. Ky. 2006) (holding that the court "does not have subject matter jurisdiction to register and enforce a state court judgment under . . . 28 U.S.C. § 1963.").

Thus, this Court does not have federal question jurisdiction of Plaintiff's action seeking to enforce state court judgments.

2. **Diversity of citizenship jurisdiction**

The proper avenue to enforce a state court judgment in federal court is to bring a claim under state law of which the federal court has an independent source of jurisdiction, such as diversity of citizenship jurisdiction. *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 122 (2d Cir. 2017) (discussing "established procedures for enforcing state court judgments in federal court"); *Ingevity Corp. v. Regent Tek Indus., Inc.*, No. 22-CV-0565, 2023 WL 2553896, at *6 (E.D.N.Y. Mar. 17, 2023) ("Generally, to enforce a state court judgment, the party seeking enforcement must file a civil action in a federal court having

independent jurisdiction to hear the claim." (citation omitted)); *Caruso v. Perlow*, 440 F. Supp. 2d 117, 119 (D. Conn. 2006) ("[T]he holder of a state-court judgment seeking to have it enforced in federal court must fall back upon the traditional, if rather cumbersome, strategy of bringing a civil action on the state-court judgment by invoking, for example, the diversity jurisdiction of the federal court[.]").

Here, however, Plaintiff does not allege facts demonstrating that the Court has diversity jurisdiction of a state law claim. To establish diversity jurisdiction under 28 U.S.C. § 1332, a plaintiff must first allege that the plaintiff and the defendant are citizens of different States. *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Johnson v. Smithsonian*, 4 F. App'x 69, 70 (2d Cir. 2001) (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000)). Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). In addition, under the diversity jurisdiction statute, the plaintiff must also allege to a "reasonable probability" that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

The Court does not appear to have diversity jurisdiction of this matter. Plaintiff does not allege his citizenship or the citizenship of any of the individuals who allegedly failed to pay state-court judgments to him.[2] Even if diversity of citizenship existed, however, Plaintiff seeks to

---

[2] The sole defendant named in this action is the "New York City Department of Justice," which is a nonexistent entity. The address Plaintiff provides, 86 Chambers Street, is the address for the Civil Division of the United States Attorney's Office for the Southern District of New York ("USAO"). Plaintiff has not alleged any facts against the USAO and, in any event, sovereign immunity dictates that a federal agency, such as the USAO, cannot be sued without its

6

enforce judgments totaling approximately $25,000. (ECF 1 at 11-23.) Because Plaintiff does not allege that that his claims meet the jurisdictional minimum – an amount in excess of the sum or value of $75,000 – he does not meet the amount-in-controversy requirement, therefore depriving this Court of diversity jurisdiction of this action.

Because the Court has neither federal question nor diversity jurisdiction of this action, Plaintiff's claims are dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses this action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

---

consent. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). Thus, "[w]hen an action is brought against the United States government," waiver of "sovereign immunity is necessary for subject matter jurisdiction to exist." *Williams v. United States*, 947 F.2d 37, 39 (2d Cir. 1991). The sovereign immunity doctrine extends to federal agencies. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). As the USAO is a federal agency and the United States has not consented to its being sued in this action, the Court dismisses that entity under the doctrine of sovereign immunity.

The Court directs the Clerk of Court to enter a civil judgment dismissing the complaint in this action.

SO ORDERED.

Dated: December 2, 2024
New York, New York

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            Chief United States District Judge